## STATE v. J. FRANK PHILLIPS.

(Filed 21 February, 1923.)

**1. Criminal Law—Fact That One Application for Certiorari Was Designated a Motion and Another a Petition Not Material.**

Where two applications for *certiorari* to a county court to remove into the Supreme Court a judgment and proceedings by which the applicant was held to work on the roads for drunkenness were filed, the fact that one application was designated as a petition and the other as a motion was not material, since it related to the form and not the substance of the application.

**2. Criminal Law—Certiorari to Review Judgment That Accused Work Roads Not so Irregular as to Require Dismissal.**

· Where a judgment was that the accused should be required to work the roads for six months if again found drunk within the county, and that the clerk of the Superior Court and the sheriff should execute the sentence upon information that the accused was again drunk in the county, a proceeding by *certiorari* to review the judgment and proceedings thereunder by which the accused was held to work the roads, instead of appealing in the usual way, was irregular, but not enough so as to warrant a dismissal.

**3. Constitutional Law—Judgment Permitting Clerk of Court and Sheriff to Revoke Suspended Sentence Held Void.**

Where accused was given a suspended sentence of work on roads for drunkenness, a provision that, if he became drunk again, the clerk of the court and the sheriff on information should put the sentence into execution was void, as a denial of due process of law, since the clerk and the sheriff had no judicial authority.

**4. Criminal Law—On Ordering Execution of Suspended Sentence, Hearing Should be Had by Court as to Violation of Conditions.**

Where a defendant was given a suspended sentence of six months work on the roads for drunkenness on plea of guilty, an allegation by the State that the condition of suspending the sentence that defendant should not

become drunk in the county again was broken, and asking enforcement of the sentence, the judge should have required the defendant to appear for inquiry, and, on finding the allegation true, should have stated his finding in the record, and enforced the sentence or have taken such other course as his finding justified.

**5. Criminal Law—Accused, Imprisoned Illegally for Violation of Condition of Suspended Sentence, Not to be Discharged.**

Where a person was imprisoned illegally by action of the clerk of the court for violating a condition of a suspended sentence, in pursuance of such power granted the clerk in the sentence, he will not be discharged, but will be released on giving bond to appear for a hearing before the trial court as to whether the condition was violated.

**6. Criminal Law—Sentence of Imprisonment in Excess of Legal Time Held Not to Entitle Prisoner to Discharge.**

Where a prisoner was given a suspended sentence of six months work on the roads for drunkenness, and on violation of a condition that he should not get drunk in the county again was illegally imprisoned by the clerk of the court in pursuance of the suspended sentence, the fact that such sentence was contrary to Public-Local Laws 1913, ch. 775, as amended by Public-Local Laws 1917, ch. 663, restricting the penalty to a term of 60 days, does not entitle the prisoner to be discharged, but the case brought up on *certiorari* will be remanded so that he may be resentenced according to law.

**7. Drunkards—Sentence of Imprisonment Exceeding Legal Limit Held Error.**

Under Public-Local Laws 1913, ch. 775, as amended by Public-Local Laws 1917, ch. 663, making punishment for drunkenness in Yancey County 60 days work on the roads, a sentence of 6 months work on the roads for drunkenness was error.

Headnotes by MR. JUSTICE WALKER.

On docket of Fall Term, 1922.

This is a petition for a *certiorari* to bring into this Court the record in the above entitled case, which was tried before Hon. T. D. Bryson, judge presiding, wherein it appears that the defendant was sentenced to pay a fine of $50 and the costs for being publicly drunk upon his plea of guilty entered upon his arraignment.

The above judgment, or sentence, was changed by the court, Judge T. D. Bryson presiding, as appears in the petition of the defendant to this Court for a *certiorari,* which is in the main stated here as it shows the several steps taken in the cause leading up to the application now made before us for a *certiorari* in lieu of an appeal, and which petition is substantially as follows:

"The defendant in the above entitled cause hereby moves the honorable judges of the Supreme Court of North Carolina for writ of *certiorari* in lieu of appeal in this cause for the reasons that at the last October Term of the Superior Court of Yancey County the defendant plead

guilty to the charge of public drunkenness, whereupon his Honor, T. D. Bryson, judge, rendered judgment in effect that the defendant should be sent to the public roads of any county designated by the commissioners of said county for a term of six months if the defendant was again drunk in Yancey County, and designated the clerk of the Superior Court and sheriff of said county to put said execution into effect upon information that the defendant was again drunk in said county. That some time later the defendant was arrested upon a capias issued by said clerk and assigned to the public roads of Henderson County, where he is now working, and unlawfully detained in custody. The defendant sued out a writ of *habeas corpus,* which was heard before his Honor, J. Bis Ray, judge, on 8 January, 1923, when he was recommitted upon the hearing.

"In support of this motion, the defendant cites the Public-Local Laws of 1913, ch. 775, p. 1598, sec. 4, and Public-Local Laws of 1917, ch. 663, p. 774, which restricts the penalty of public drunkenness in Yancey County to a term of sixty days, and which his Honor, T. D. Bryson, exceeded by a term of four months. That the defendant was sentenced conditionally only, or rather the judgment was suspended upon the condition that the defendant pay the cost and remain sober, and that the clerk had no right, nor did his Honor have any right to designate the clerk, to cause the defendant to be arrested and committed directly to the public roads, without giving him a hearing as to whether he had violated the conditions of the judgment, and which the defendant denies he had violated. As to the authority of the clerk to commit the defendant, upon *ex parte* information and out of court, the prisoner cites *S. v. Burnette,* 173 N. C., 734; *S. v. Hardin,* 183 N. C., 815 (*S. c.,* 12 S. E. Reporter, 593).

"That no appeal is provided by the laws of North Carolina from a judgment upon a writ of *habeas corpus,* and that the only proceeding available to the defendant is by application, or motion, for a writ of *certiorari* to have reviewed the record and the judgment rendered by his Honor, Judge Bryson. *S. v. Herndon,* 107 N. C., 934; *In re Holley, supra.*

"Wherefore, the defendant makes this motion for a writ of *certiorari.*"

It seems that a second petition was filed by defendant for the writ of *certiorari* (perhaps one being an amendment of the other), which is substantially as follows:

*To the Honorable Justices of the Supreme Court of the State of North Carolina:*

Your petitioner, J. Frank Phillips, respectfully showeth:

1. That the defendant was indicted in the Superior Court of Yancey

County, charged with public drunkenness, and plead guilty thereto at the October Term of said court, 1922.

2. That his Honor, T. D. Bryson, rendered judgment against the defendant as follows:

"*State v. J. Frank Phillips:*   In this cause the defendant pleads guilty and ·was fined $50 and the cost of this action.   And it appearing to the court that the defendant was intoxicated all this term of court, it is now ordered the judgment be stricken out and the following judgment rendered against the defendant:

"It is ordered and adjudged by the court that the defendant be confined to the county jail of Yancey County for a term of six months, to be assigned to work upon the public roads of any county in the State that the county commissioners may assign him to, on condition that if said Phillips gets drunk again in Yancey County it shall be the duty of the clerk of the Superior Court or the sheriff of this county, upon information that defendant has been drunk, to execute capias and put this judgment into effect.

"Defendant to be discharged upon payment of the cost."

3. That on 2 December, 1922, the clerk of the Superior Court of Yancey County issued a capias for the defendant upon which the sheriff of Yancey County has arrested the defendant, and now has him in the common jail of Yancey County pending negotiations between the commissioners of Yancey County and Henderson County to the end of assigning him to the roads of that county.

4. That your petitioner procured a writ of *habeas corpus* issued by his Honor, J. Bis Ray, on 3 January, 1923, which was heard before him on 8 January, 1923, when his Honor dismissed the *habeas corpus* and remanded the defendant to prison under the said judgment of his Honor, T. D. Bryson.

5. That affiant denies that he had violated the conditions of the judgment of Judge Bryson, and contends that he has a right to be heard in open court thereon, and that the clerk of the Superior Court does not have jurisdiction to assign him to jail arbitrarily without such hearing; that the judgment of his Honor, T. D. Bryson, is illegal in that he had no legal authority to sentence the defendant for a longer term than sixty days under the public-local statutes applying to Yancey County.

6. Your petitioner further shows that he has lost his right to appeal from the original indictment and trial on the merits by his acquiescence in the suspension of the judgment, and that unless your Honors will issue a writ of *certiorari* for the *habeas corpus* proceedings to be reviewed by your Court that he will suffer great wrong by being forced to serve an excessive term of imprisonment without hearing, and contrary to the law and Constitution of the State.

Your petitioner therefore prays your Honors to grant him a writ of *certiorari* directed to the clerk of the Superior Court of Yancey County, and to the other officers of said court, to remove the said judgment and proceedings into the Supreme Court of North Carolina; also that a *supersedeas* writ be issued directed to the sheriff of Yancey County commanding him to desist from all further proceedings in the case, and directing him to release the defendant on bail, to be fixed by your Honors and approved by the clerk of the Superior Court of Yancey County.

These petitions were properly verified.

*R. W. Wilson for petitioner.*

WALKER, J., after stating the facts: It may be well to state that there is a little confusion in the record as to the exact nature of the application to this Court, on being designated as a petition and the other as a motion; but this is not very material, as it affects only the form and not the substance of the application.

The board of county commissioners designated Henderson as the county in which the defendant should work under the sentence of the court, and he is now performing his work there.

This proceeding for a *certiorari*, instead of an appeal in the usual way and by the ordinary method, is somewhat irregular, but not enough so to warrant a dismissal. Besides, the Attorney-General has made no such motion, and very properly so. We will, therefore, consider the case and decide it on its merits. We are thus following the course indicated in the case of *In re Holley,* 154 N. C., 163, which was similar in its facts, or, at least, sufficiently so to make it a reliable precedent. It was there held:

"1. Except in cases concerning the care and custody of children, there is no appeal from a judgment in *habeas corpus* proceedings. Rev., sec. 1854.

"2. In *habeas corpus* proceedings wherein upon the hearing are involved questions of law or legal inference, and judgment is a denial of a legal right, it may be reviewed by the Supreme Court by virtue of the Constitution, Art. IV, sec. 8, under the power given to this Court 'to issue any remedial writs necessary to give it general supervision and control over the proceedings of inferior courts.'

"3. The remedy given under the constitutional power conferred upon the Supreme Court to review a judgment in *habeas corpus* proceedings in matters not involving the care and custody of children, Constitution, Art. IV, sec. 8, shall only be exercised by *certiorari,* and the jurisdiction cannot be acquired by appeal upon exception and error assigned.

"4. In *habeas corpus* proceedings, where it appears from the application for *certiorari* in the Supreme Court, or the documents annexed thereto, that the petitioner is detained under a final judgment of a competent tribunal, the writ will be denied in the Supreme Court; and when such fact is disclosed on the hearing, the petitioner must be remanded. Rev., secs. 1822 (2); 1827, 1848 (2).

"5. The term 'final judgment or decree of a competent tribunal' wherein the Supreme Court will not issue a *certiorari* to review a judgment entered in *habeas corpus* proceedings, refers only to judgments authorized by the law applicable to the case in hand; and when it appears from an inspection of the record proper and the judgment itself that the court had no jurisdiction of the same, and was manifestly without power to enter the judgment or to impose the sentence in question, there is no final sentence of a competent tribunal.

"6. The term 'competent tribunal' used by the Revisal, sec. 1822, in making an exception to the power of this Court to review a judgment in *habeas corpus* proceedings, means that where a committed criminal is detained under a sentence not authorized by law, he is entitled to be heard, and where, though authorized in kind, it extends beyond what the law expressly permits, he may be relieved from further punishment after serving the lawful portion of the sentence; and a different construction would render the statute unconstitutional." See, also, *S. v. Green,* 85 N. C., 600.

The court proceeded not only irregularly, but its action in sentencing the defendant to six months at hard labor on the public roads in a county to be designated by the county commissioners was without any warrant in law. The Constitution of our State and every acknowledged principle of the common law, and of justice and right, allow a defendant to be heard by the proper tribunal before he is condemned or punished. No one will now deny, or even question, so plain and conceded a rule of the law as established and enforced from the earliest and most ancient period to the present time. The defendant in this case pleaded guilty, which justified a sentence of imprisonment at hard labor on the roads. This was not what was done, but it was left to the judgment of a nonjudicial person to determine whether he had violated the terms and conditions of the suspended judgment by his insobriety, and, if found by the clerk of the court or the sheriff that he had done so, he should be sent to the roads of any county designated by the county commissioners, to be assigned to hard labor for the term of his imprisonment. It is perfectly plain, and even palpable, that such a sentence is void, being in contravention of the prisoner's constitutional rights. It is undoubtedly true that the public welfare or "the good of the whole" is paramount, but experience has brought men to see the truth that the public

welfare is preserved only when limitations are placed upon the government and those who make, declare, and execute the law. The public welfare demands the punishment of crime as a means of prevention, but the same public welfare demands that trial by due process of law and conviction shall precede punishment. When such limitations are not imposed, it is found that "the grim tradition" is true:

> "I oft have heard of Lydford law,
> How in the morn they hang and draw,
> And sit in judgment after."

"We cannot assent to the validity of any legislative or judicial act depriving the citizen of his life, liberty, or property which will not stand the test of the standard fixed by the Constitution." *Daniels v. Homer,* 139 N. C., 239. It was not the deliberate judgment of "An upright judge, a learned judge," which the law requires before punishment is inflicted. Neither the clerk of the court nor the sheriff is invested by law with any such power. Neither of them is endowed by law with any such jurisdiction, and no citation of authority is needed to establish so plain a proposition.

If the defendant was sentenced upon his plea of guilty, and the judgment was suspended, or its immediate execution withheld, on a condition, and the State alleged a violation of that condition, and asked for the enforcement of the sentence, because of the violation of the condition upon which it was based, the judge should have required the defendant to appear before him, by notice or by capias, if necessary, and inquired into the allegation of the State, and, if found to be true by him, he should have enforced the judgment or taken such other course as his finding may have justified. But he clearly had no power or jurisdiction to leave this important and essential judicial prerequisite to be ascertained or found by a clerk of the court, or a sheriff, and thereupon to order the imprisonment of the defendant with hard labor upon the roads of any designated county. Such a course is abhorrent to our notion of the rights and liberties of freemen. It goes without saying that there should be no feeling or prejudice, or other motive, in sentencing a defendant who has committed a violation of one law, more than there is where he has offended against some other law, but only a calm and dispassionate judgment upon the facts of the case, without regard to the particular nature of the crime committed. Crimes of no kind should be punished by passion or prejudice, and there has been none such here. We are absolutely sure that such is the case. The Great Judge of all men looks with compassion upon His creatures and con-

STATE *v.* PHILLIPS.

siders them in mercy. We are told in beautiful and impressive form, when Antonio confessed the bond he gave, and Portia addressed Shylock:

"ANTONIO:   Ay, so he says.

"PORTIA:    Do you confess the bond?

"ANTONIO:   I do.

"PORTIO:    Then must the Jew be merciful.

"SHYLOCK:   On what complaint must I? Tell me that.

"PORTIA:    The quality of mercy is not strain'd,
It droppeth as the gentle rain from heaven
Upon the place beneath. It is twice blest:
It blesseth him that gives and him that takes.
'T is mightiest in the mightiest; it becomes
The throned monarch better than his crown;
His sceptre shows the force of temporal power,
The attribute to awe and majesty,
Wherein doth set the dread and fear of kings;
But mercy is above this sceptred sway,
It is enthroned in the hearts of kings,
It is an attribute to God Himself;
And earthly power doth then show likest God's,
When mercy seasons justice. Therefore, Jew,
Though justice be thy plea, consider this,
That in the course of justice none of us
Should see salvation; we do pray for mercy;
And that same prayer doth teach us all to render
The deeds of mercy."

We pause to remark that the prisoner has no ground whatsoever upon which to complain in this proceeding that the law was not administered fairly and impartially in his behalf, for it was, in every respect, though it may have been erroneously conceived and applied. He had the full benefit of decisions of two of our ablest judges, men not only of ability, but of great judicial learning, and incapable of being otherwise than perfectly fair, and who always consider and decide, as Edmund Burke once said, with "The cold neutrality of the impartial judge."

We may also observe that the judgment appears to be not so much a suspended one, as a conditional judgment, which is forbidden; but for the sake of further argument, we may assume and treat it as a suspended judgment.

But that is not the serious question before us, because this is what we must decide, and do decide. The clerk or sheriff had no judicial power to pass upon the question, as to the guilt of a defendant or his liability to punishment, which resides alone in the court, generally with the aid of a jury, but not so in this instance. The judge should have ascertained whether the allegation of the State that the prisoner had violated the condition on which the judgment was suspended, or its immediate execution withheld, had been shown, and his finding should be stated in the

record. If he decided upon competent evidence that it had been so violated, he should then have proceeded to impose such punishment as in his sound discretion the circumstances of the case and the law required. Proceeding otherwise, and as he did, was contrary to law, and he was without jurisdiction so to act, and the defendant consequently is held illegally and entitled to be released from custody, but only on giving bond, or recognizance, for his appearance at the next term of the court, when and where the case can be properly heard and judgment entered according to approved practice and procedure of the courts.

These principles of the law, as applicable to the facts of this case, will be found stated and settled in the following decisions: *S. v. Hardin,* 183 N. C., 815; *S. v. Burnette,* 173 N. C., 734; *S. v. Vickers,* 184 N. C., 676 (114 S. E., 168). In the *Vickers case, supra,* substantially the same order was entered by the court as we find in this record, but the prisoner being present in court, we held that the judge properly remanded him to the custody of the sheriff in order that he should receive the punishment imposed upon him under the former judgment of the court.

This defendant has not been legally sentenced, though we will not discharge him, but instead will require that he give a bond, or recognizance, in the sum of $200 for his appearance at the next term of the Superior Court of Yancey County, to have and receive such punishment for his offense as the judge may impose and as the law allows. The judge will find the facts and decide accordingly.

We express the hope that the judges will be more careful in acting upon suspended judgments and follow the practice and procedure so often approved by this Court.

Writ of *certiorari* granted and judgment is reversed upon the record as it now appears. The prisoner will be at once released on giving a justified bond as required, before the clerk of the Superior Court of Yancey County, and his custodian will comply with this order.

The contention of the prisoner that he is entitled to be discharged because the judge exceeded the limit of punishment authorized by law, that is, sixty days imprisonment, cannot be taken at this time, as he has not even undergone punishment for that period of time.

Where the Superior Court has imposed a punishment which exceeds the limit fixed by the law, the prisoner is not entitled to be discharged because of it, but the case will be remanded so that he may be brought before the court and resentenced according to law, as was done in *S. v. Battle,* 130 N. C., 655. In this case the statute prescribes a punishment of not exceeding sixty days imprisonment, and the court erred in exceeding that limit. Public-Local Laws of 1913, ch. 775, as amended by Public-Local Laws of 1917, ch. 665, which is confined in its operation to Yancey County.

We held in *S. v. Burnette,* 173 N. C., 734:

"3. A trial justice, under the statute, is but the presiding officer of his court, and where the court has suspended judgment against the prisoner upon condition that he report to the court from time to time and show his good behavior, he may not thereafter cause the defendant to be imprisoned or sent to the roads for violating the conditions imposed, except in open court regularly sitting for the transaction of business, and the court must afford him opportunity to be heard, and to employ counsel, if he so desires; and the proceeding held privately in the office of the justice wherein he attempts to order the execution of the judgment, is without warrant of law and of no effect.

"4. The rule that the proceedings of a court of competent jurisdiction are not reviewable in *habeas corpus* proceedings does not apply when it appears that the justice before whom the case had been determined had convicted the applicant of violating the prohibition law, suspended judgment upon condition of good behavior, and ordered the execution of the sentence and the arrest of the defendant in proceedings privately had in his office, and not in open court, as the law requires.

"5. It appearing in this case that the trial court suspended judgment in a criminal action upon certain conditions, without adjudication of the fact whether the defendant had complied therewith, and had ordered the execution of the sentence and the arrest of defendant without warrant of law, *it is held* that the defendant give a bond in a certain sum for his appearance before the criminal court at a time to be fixed by it, giving him reasonable opportunity to be heard, employ counsel, etc., and in default of his giving the bond, the court to issue a warrant or capias for the purpose of investigation."

And in *S. v. Hardin, supra,* it was held:

"1. It is within the power of the court having jurisdiction of a criminal action to suspend judgment on verdicts of conviction for determinate periods and for a reasonable length of time, conditioned on good behavior, and the court so acting may in its sound discretion conclusively determine from time to time whether the conditions have been violated, except where the instance being inquired into has been determined for the defendant by the jury, or other competent tribunal having jurisdiction of the criminal offense which is the sole basis of the present inquiry, in which event the result of the former action will be controlling.

"2. Where the court, within the proper exercise of its authority, has suspended judgment upon conviction of the defendant in a criminal action, the term 'good behavior' signifies that his conduct will be such as the law authorizes, in contradistinction to bad behavior, punishable by the law.

"3. In order for the court having jurisdiction to impose a valid sentence upon a suspended judgment in a criminal action, it must be properly established by pertinent testimony that the conditions upon which the judgment had been suspended had been broken by the defendant.

"5. The findings of the trial judge on imposing a sentence under a suspended judgment in a criminal action are insufficient where they only permit the inference of a breach of the condition, and do not find the ultimate fact of guilt in infringing the criminal laws of the State.

"6. The judge of the Superior Court having jurisdiction is not concluded in determining whether the defendant has broken the condition annexed to a suspended judgment, and passing sentence thereunder, by a judgment of a recorder's court not having jurisdiction, acquitting the defendant of the offense under investigation.

"7. The XVIII Amendment to the Constitution of the United States, and the Volstead Act designed to make it effective, do not condemn or make unlawful the manufacture of liquor for certain specified purposes, or under certain conditions, and a finding of the judge of the Superior Court that the defendant, under a suspended judgment, had manufactured large quantities of wine is not sufficient upon which he may pass the sentence, for condition broken, the ultimate fact of guilt not having been found by him. *S. v. Yates,* 183 N. C., 753, concerning the exercise of the pardoning power vested by our Constitution in the Governor, cited and distinguished.

"8. The State courts have no jurisdiction over offenses arising exclusively under the XVIII Amendment to the Constitution of the United States, and the Volstead Act passed for its enforcement; and where the State court has suspended judgment against the defendant conditioned on his good behavior, this, without more, should be considered only in connection with the State statutes on the subject of prohibition, that our courts have jurisdiction alone to enforce, and not with reference to the Federal law on the subject.

"9. A sentence imposed under a suspended judgment in a criminal action upon condition of good behavior broken is not objectionable as double punishment for the same offense, by reason of the fact that the defendant had performed his agreement to reimburse the private prosecutors for money they paid in attorneys' fees in the action.

"10. Where the Supreme Court has reversed the action of the Superior Court judge in imposing a sentence under a suspended judgment in a criminal action, for an insufficiency of finding as to the defendant's ultimate guilt, the judgment will be set aside and the cause remanded to be proceeded with according to law."

Those cases are quite sufficient as authority for the action which we direct to be taken in this prosecution.

This opinion and decision will be certified down at once, and the solicitor of the district and Mr. Alley, prisoner's counsel, promptly notified of it by the clerk of the court.

Reversed.